IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **MAURICE DARBY,** : | |
|       **Plaintiff,** : | |
|     v. : | CIVIL NO. 06-CV-5009 |
| : | |
| **STOUT ROAD ASSOCIATES, INC.** : | |
| **t/a HILTON PHILADELPHIA CITY** : | |
| **AVENUE, et al.,** : | |
|       **Defendants.** : | |

**MEMORANDUM OPINION & ORDER**

**RUFE, J.**                                                                                                                    **June 4, 2007**

       Presently before the Court in this employment-discrimination action is Defendants' Motion to Dismiss and for Partial Summary Judgment. In their Motion, Defendants ask the Court to dismiss Plaintiff's employment-discrimination claim brought under the Pennsylvania Human Relations Act ("PHRA") and Plaintiff's state-law assault claim against Defendant James Tobin. Additionally, they seek summary judgment in their favor on Plaintiff's claim for employment discrimination under Title VII of the Civil Rights Act of 1964. For the reasons that follow, Defendants' Motion will be granted in part, denied in part, and dismissed in part.

**I. FACTUAL BACKGROUND**

       Sometime around August 2000, Plaintiff Maurice Darby was hired by Defendant Stout Road Associates, Inc. ("Stout Road") to be a security officer at the Radisson Hotel in Philadelphia, Pennsylvania, which later became the Hilton Philadelphia ("the Hilton"). During Plaintiff's employ, Defendant James Tobin was employed by Stout Road as its Director of Security, thereby serving as Plaintiff's supervisor.

       Plaintiff alleges that throughout his employment by Stout Road, he was subjected to

...

a hostile working environment based on his race and/or his sex. He claims that the hostility was created and sustained by Defendant Tobin, who made racist and sexually charged comments to him on a consistent basis. He further alleges that he was unlawfully terminated based on his race and/or sex, and in retaliation for reporting Tobin's harassing behavior to Howard Wurzak, the president of the Hilton.

Plaintiff asserts three claims against Defendant Stout Road and four claims against Defendant Tobin. In Count I, asserted against both Defendants, Plaintiff alleges a violation of Title VII based on the allegedly hostile work environment. In Count II, asserted against both Defendants, Plaintiff alleges a claim under 42 U.S.C. § 1981. In Count III, also asserted against both Defendants, Plaintiff alleges a violation of the PHRA based on his allegedly discriminatory discharge. Finally, in Count IV, asserted again Defendant Tobin only, Plaintiff alleges a state-law claim for assault based on an incident that occurred in February 2006, approximately two years after Plaintiff's employment at the Hilton ended.

## II. DISCUSSION

Defendants now move the Court to dismiss Counts I, III, and IV, arguing that Counts III and IV should be dismissed based on the pleadings, and that the Court should grant summary judgment in their favor on Count I. The Court will first consider whether Counts III and IV should be dismissed, before briefly addressing Defendants' request for summary judgment on Count I.

**A. Motion to Dismiss Count III**

Defendants argue that Plaintiff's employment-discrimination claim brought under the PHRA must be dismissed because he failed to file a complaint with the Pennsylvania Human Relations Commission ("PHRC") within 180 days of the alleged discriminatory conduct. As

mentioned above, Count III of the Complaint includes allegations that Defendants violated the PHRA by discharging Plaintiff based on his race and/or sex, and in retaliation for voicing his opposition to Defendant Tobin's discriminatory conduct to the Hilton's President, Howard Wurzak.[1] According to Defendants, that discharge occurred on December 31, 2003, and Plaintiff did not file his PHRC complaint until July 9, 2004; thus, the complaint was filed 11 days after the filing period expired.[2]

A plaintiff bringing suit under the PHRA must file an administrative complaint with the PHRC within 180 days of the alleged discriminatory act.[3] Failing to do so precludes the plaintiff from later obtaining judicial remedies under the PHRA.[4] Generally, the time period begins to run when the discriminatory act occurs; when, however, there is some discrepancy about when the violation occurred or in situations where a plaintiff may not have been immediately aware that he had been harmed, the filing period may be subject to equitable tolling.[5]

At this stage in the instant litigation, the Court will not dismiss Plaintiff's PHRA claim because the alleged discriminatory conduct may have occurred within the 180-day period

---

[1] See Compl. ¶¶ 38, 40.

[2] Defs.' Mot. to Dismiss & for Partial Summ. J. [Doc. # 5], at 9 [hereinafter Defs.' Mot.].

[3] 43 Pa. Cons. Stat. Ann. § 959(h).

[4] Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997).

[5] See West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994)). Recently, in Ledbetter v. Goodyear Tire & Rubber Co., Inc., No. 05-1074, ___ U.S. ___, 2007 WL 1528298 (May 29, 2007), the United States Supreme Court reiterated that it has not yet resolved whether and when the discovery rule may apply to the running of filing periods such as the 180-day period at issue in this case. Id. at *14 n.10. In doing so, the Court referenced its previous decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), in which it stated that: "There may be circumstances where it will be difficult to determine when the time period should begin to run. One issue that may arise in such circumstances is whether the time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered." Id. at 114 n.7.

preceding the filing of Plaintiff's PHRC complaint. It is not apparent from the pleadings that the discharge was final on December 31, and it may not have actually occurred until sometime after December 31. It is also possible that the discharge actually occurred on December 31, but Plaintiff did not realize that he had been permanently discharged, and thereby harmed, until sometime thereafter. If that is the case, the running of time may be subject to equitable tolling.[6]

According to Plaintiff's Complaint, on or around December 31, 2003, Defendant Tobin told Plaintiff that "he [Plaintiff] had resigned" and, thereafter, failed to add him to the work schedule.[7] It is not apparent, however, that Plaintiff was given official notice of termination on December 31, 2003, or at anytime. In fact, it is not clear whether Tobin even had the authority to unilaterally make termination decisions. It is possible that Plaintiff was not aware that he had actually been discharged until he realized that he had been indefinitely removed from the work schedule, sometime well after Tobin told him that "he had resigned." This possibility that Plaintiff was not immediately aware of the discharge is bolstered by the fact that Tobin had previously told Plaintiff that he was fired when he had not actually been fired.[8] Moreover, it is alleged that Tobin called Plaintiff in February or March 2004 and asked him if he wished to be added to the work schedule, suggesting that Plaintiff had never been discharged, but merely taken off of the schedule temporarily.[9]

At this time, the exact date of Plaintiff's discharge is simply unclear, and it is equally

---

[6] See supra note 5 and accompanying text.

[7] Compl. ¶¶ 10(w), 11.

[8] See Compl. ¶ 10(s).

[9] See Compl. ¶ 15.

unclear whether Plaintiff knew that he had actually been harmed or that his right to be free from discriminatory discharge had been violated on December 31, 2003. Looking only to the pleadings, the Court cannot find that Plaintiff failed to timely file his PHRC complaint. Perhaps after discovery and further development of the facts, an exact discharge date may be identified, and the Court may then determine whether the PHRC complaint was filed within the 180-day period. At the motion-to-dismiss stage, however, the Court is unwilling to dismiss the claim outright.[10]

**B. Motion to Dismiss Count IV**

Defendants next argue that the Court should not exercise supplemental jurisdiction over Plaintiff's state-law assault claim, citing the analytical approach established by the Third Circuit in Ambromovage v. United Mine Workers of America.[11] Plaintiff responds by directing the Court to the supplemental-jurisdiction statute, 28 U.S.C. § 1367, and suggesting that the three-step analysis announced by the Third Circuit in Ambromovage is inapplicable.

Congress enacted 28 U.S.C. § 1367 to codify the district courts' supplemental jurisdiction, which had been established by the United States Supreme Court in cases such as Hurn v. Oursler[12] and United Mine Workers v. Gibbs.[13] The statute provides district courts with the discretion to exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy

---

[10] The Court notes that Plaintiff's argument asserting the "continuing violation" theory does not have merit. The basis of the Court's denial of Defendants' Motion is the ambiguity surrounding the actual date of the allegedly discriminatory act, not an adoption of Plaintiff's argument that the PHRA violations were of a continuing and ongoing nature well after December 31, 2003.

[11] 726 F.2d 972, 989–90 (3d Cir. 1984).

[12] 289 U.S. 238 (1933).

[13] 383 U.S. 715 (1966).

under Article III of the United States Constitution."[14]

Before the statute was enacted, the Third Circuit announced a three-tiered analytical approach to be employed by district courts faced with determining whether they should exercise supplemental jurisdiction.[15] First, the "court must determine whether it has constitutional power to determine a state-law claim" by considering whether "there is a 'common nucleus of operative fact' between the state claim at issue and the accompanying federal claims."[16] Second, the court must determine whether exercising supplemental jurisdiction "would violate a particular federal policy decision."[17] Third, the court should, in its discretion, "weigh the various factors bearing on the appropriateness of hearing a pendent claim."[18]

Even though this three-part test was announced before the statute was enacted, it embodies the spirit of the statute by requiring district courts to consider important factors such as the limitations placed on federal jurisdiction by Article III and the prudential implications of hearing state-law claims based on the same operative facts as the federal-law claims. In particular, the first prong of the Third Circuit's analytical approach specifically addresses the statutory requirement that state-law and federal-law claims be so related that they form part of the same case or controversy under Article III. Both the statute and the Ambromovage approach suggest that a district court should not exercise supplemental jurisdiction if the state-law claim is unrelated in law and fact to

---

[14] 28 U.S.C. § 1367 (2000).

[15] See Ambromovage, 726 F.2d at 989–90.

[16] Id. at 989.

[17] Id. at 989–90.

[18] Id. at 990.

the federal-law claims.[19]

In the instant case, the Court need not proceed further than the first prong of the Ambromovage test to determine that Plaintiff's state-law assault claim should not be considered by this Court. The assault claim is completely unrelated to his federal employment-discrimination claims under Title VII. None of the facts underlying the employment-discrimination claims are related to the discrete set of facts underlying the assault claim. The alleged employment discrimination occurred between 2000 and late 2003 or early 2004 and involves conduct that occurred during or related to Plaintiff's employment by Stout Road. The alleged assault occurred in February 2006, two years after his employment was terminated, and has no relation to any alleged employment discrimination. As Defendants point out, Plaintiff's assault claim and his employment-discrimination claims "involve different witnesses, different damages, different questions of law, and different places."[20]

There simply is not a common nucleus of operative fact between Plaintiff's federal claims and his state-law assault claim and, in accordance with Ambromovage, the Court does not have the "constitutional power to determine [the] state-law claim."[21] Consequently, the Court declines to exercise its supplemental jurisdiction over Count IV of Plaintiff's Complaint, and the claim will be dismissed. Of course, Plaintiff may pursue an assault claim against Defendant Tobin in state court, the proper venue for such a claim in this instance.

---

[19] See 28 U.S.C. § 1367 (creating supplemental jurisdiction when claims are so related that they form same case or controversy under Article III); Ambromovage, 726 F.2d at 989 (requiring common nucleus of operative fact between state claims and federal claims).

[20] Defs.' Mot. at 13.

[21] 726 F.2d at 989.

**C. Motion for Summary Judgment on Count I**

Although this case has not proceeded beyond the pleading stage, Defendants argue that they are entitled to summary judgment on Plaintiff's Title VII employment-discrimination claim. In support of their argument that no reasonable jury could find that Plaintiff would have found the alleged harassment "either subjectively offensive or unwelcome," they have attached affidavits sworn by a variety of Plaintiff's coworkers. Plaintiff's counsel has responded by filing an affidavit of her own under Federal Rule of Civil Procedure 56(f), claiming that she cannot sufficiently oppose the motion for summary judgment without conducting certain enumerated discovery.

Under Rule 56(f), when a party opposing a summary-judgment motion files an affidavit detailing its inability to "present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment . . . or may make such other order as is just."

Here, the affidavit filed by Plaintiff's counsel sufficiently states the reasons that Plaintiff is presently unable to properly oppose Defendants' Motion. At this early stage, Plaintiff has not yet been afforded any opportunity to develop his case through discovery; no scheduling order has been entered in this case and Plaintiff has not been able to gather the evidence necessary to support his case. Plaintiff must be afforded the opportunity to depose witnesses, request documents, and otherwise gather facts and evidence before he can be required to oppose the Motion. Consequently, summary judgment is not appropriate at this time, and the Court will dismiss Defendants' Motion without prejudice. Defendants may, of course, renew or re-file their Motion at a later, more appropriate, time.

### III. CONCLUSION

Plaintiff will now be granted the opportunity to conduct discovery in order to support

his claims of employment discrimination under federal law—Title VII and 42 U.S.C. § 1981—and state law—the PHRA.  His state-law assault claim, however, is so temporally, factually, and legally unrelated to his employment-discrimination claims that the Court will not exercise supplemental jurisdiction over the claim.  Accordingly, Counts I, II, and III will survive Defendants' Motion for Summary Judgment, but Count IV will be dismissed.

   An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAURICE DARBY,<br>　　　　Plaintiff,<br>　　v.<br><br>STOUT ROAD ASSOCIATES, INC.<br>t/a HILTON PHILADELPHIA CITY<br>AVENUE, et al.,<br>　　　　Defendants. | :<br>:<br>:<br>:　　CIVIL NO. 06-CV-5009<br>:<br>:<br>:<br>:<br>:<br>: |

### ORDER

**AND NOW**, this 4th day of June 2007, upon consideration of Defendants' Motion to Dismiss and for Partial Summary Judgment [Doc. # 5], Plaintiff's Response thereto [Doc. # 10], and Plaintiff's counsel's Affidavit Pursuant to Federal Rule of Civil Procedure 56(f) [Doc. # 9], it is hereby **ORDERED** that the Motion is **DENIED IN PART**, **GRANTED IN PART**, and **DISMISSED IN PART**, as follows:

(1) Defendants' Motion to Dismiss Plaintiff's employment-discrimination claim under the Pennsylvania Human Relations Act, Count III, is **DENIED** without prejudice;

(2) Defendants' Motion to Dismiss Plaintiff's state-law assault claim, Count IV, is **GRANTED**, and Count IV is **DISMISSED**.

(3) Defendants' Motion for Summary Judgment on his Title VII employment-discrimination claim, Count I, is **DISMISSED** without prejudice, in accordance with Federal Rule of Civil Procedure 56(f);

It is **FURTHER ORDERED** that Defendants **SHALL FILE AN ANSWER** to Plaintiff's Complaint in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).

It is so **ORDERED**.

**BY THE COURT:**

**/s/ Cynthia M. Rufe**
**CYNTHIA M. RUFE, J.**